THE MERCHANTS' INSURANCE COMPANY OF THE CITY OF NEW YORK *vs.* HINMAN and others.

The term "next of kin," as used in the section of the statute authorizing actions to be brought against the next of kin of any deceased person, to recover the value of any assets that may have been paid to them by an executor or administrator, means those to whom, under the statute of distributions, the personal estate of the deceased would pass. It therefore includes the widow of the deceased.

Where the shares of the estate belonging to infants have been paid over to their general guardians, the action is properly brought against the infants; and the judgment should direct the money to be paid out of the funds in the hands of the guardians.

Mere delay in foreclosing a mortgage, without any request or notice to foreclose, and where the interest has been paid, is not enough to charge upon the mortgagees the consequences of a fall in the value of the mortgaged property.

The sale, by a widow, of her interest in the assets decreed by the surrogate to be paid over to the next of kin, by the administrator, will leave her liable to creditors of the estate, for the amount of assets received by her assignee, to the same extent as if the same had been received by herself.

If the widow has married again, her husband is not a necessary or proper party to an action brought against her, by a creditor of the estate, for the purpose of recovering the value of assets paid over to her as one of the next of kin, by the administrator.

IN June, 1851, Thomas Lewis executed to the plaintiffs a bond conditioned for the payment of $20,000 and interest, which bond was secured by a mortgage upon five lots, in the county of Kings, made by the said Thomas Lewis and Clarissa C. his wife. Thomas Lewis died intestate, leaving him surviving his widow, Clarissa C. Lewis, who afterwards intermarried with the defendant Richard H. Hinman; also Clara C. Lewis, Charles P. Lewis and Thomas S. Lewis, infant children, and Joseph B. Lewis, who afterwards assigned his interest in the decedent's estate to William Hutton. In August, 1854, Andrew V. Stout was appointed administrator of the said Thomas Lewis, and interest on the bond was paid to July 1st, 1855. And on the 1st of May, 1856, the plaintiffs commenced an action to foreclose the mortgage, making the administrator a party. The premises were regu-

Merchants' Ins. Co. of New York *v.* Hinman.

larly sold at public auction, by the sheriff, on the third of November, 1856, in presence of the defendant Richard H. Hinman, and the guardian *ad litem* of the infant defendants, and others. The sheriff reported a deficiency of $7674.14, for which judgment was docketed against the administrator on the 17th of November, 1856, and an execution issued on the judgment, to the sheriff of Kings county, on the 18th of November, 1856. The accounts of the administrator were finally settled on the 11th of July, 1856, and the assets decreed to be paid as follows: To the defendant, Clarissa C. Hinman, $18,109.13; and to each of the defendants, Clara C., Charles P. and Thomas S. Lewis, $9054.57. Clarissa C. Hinman's share was in fact paid to Solomon Handford, who had advanced her money, and to whom she had assigned it; and the shares of the others were paid to their general guardian. This action was brought under § 23 of the statute relative to suits by and against legatees, and against next of kin, heirs and devisees, &c. (3 *R. S. 5th ed.* 748,) to recover the deficiency.(*a*) The complaint contained substantially the facts above set forth. The answer of the infant defendants by their guardian *ad litem* contained a general denial, and alleged laches on the plaintiffs' part, and other outstanding debts of the decedent. The answer of Hinman and wife was served November 27, 1857, and denied that Mrs. Hinman was next of kin to Thomas Lewis, deceased, or that her husband received any of the decedent's estate as next of kin, or that she had any separate estate, or that execution was duly issued against the administrator; and alleged laches on the part of the plaintiffs, and other outstanding claims against decedent. William Hutton did not appear; and as to him, the complaint was dismissed. Joseph

(*a*) That section is as follows: " Actions against the next of kin of any deceased person, to recover the value of any assets that may have been paid to them by an executor or administrator, may be brought against all of the said relatives jointly, or one or more of them, for the amount received by each of them."

B. Lewis was not served with process, and did not appear in the action.

Judgment was rendered at special term against all the defendants, except the two last named, for the full amount of the claim, to be apportioned as the statute directs. And from that judgment the defendants appealed.

*P. G. Galpin*, for the appellants Hinman and wife. The judgment cannot be sustained against Mrs. Hinman. I. She is not contemplated by the statute as being liable, she not being one of the next of kin. (*Nichols* v. *Savage, cited* 18 *Ves.* 53. *Garrick* v. *Lord Camden*, 14 *id.* 376, 381, 386. *Watt* v. *Watt*, 3 *id.* 244. *Bailey* v. *Wright*, 18 *id.* 49. *Cholmondey* v. *Lord Ashburton*, 6 *Beav.* 86.) (1.) The statute of distribution directs the estate to be distributed to the widow, children, or next of kin, &c. (2 *R. S.* 97, § 75.) (2.) The right of action is given against the next of kin only. (*Id.* 90, § 42.) (3.) Such right being confined by the statute to them, the court cannot by intendment extend it to others not specially embraced in it.

II. The statute further provides, that all mortgages upon lands, &c. shall be paid by the heir to whom they descend, &c. (1 *R. S.* 749, § 4.) (1.) The plaintiffs must show that the heir refused to pay the mortgage, before they can maintain the action. (2.) The request not to foreclose, if any is presumed, must be regarded as being made at the instance of the heirs and for their benefit, and they alone are liable for any deficiency. (3.) The understanding between the plaintiffs and the heirs to delay the foreclosure, is a tacit agreement on the plaintiffs' part to look to the land and the heirs for satisfaction of the mortgage.

III. The plaintiffs do not come within the provisions of the statute, which is for the benefit only of such creditors as may have neglected to present their claims. (2 *R. S.* 90, § 42.) (1.) The plaintiffs presented their claim, which was acknowledged by paying interest upon it; it should, there-

fore, be disposed of in the same manner as other claims presented. (2.) It makes no difference that the deficiency arose after distribution. The claim having been presented, it was the duty of the administrator to provide against any deficiency. He became personally liable for it, and the plaintiffs must show that they have not only exhausted their remedy against the estate in his hands, but also personally and on his bond.

IV. No valid execution was issued against the administrator. (2 *R. S.* 87, § 32. *Id.* 363, § 3. 9 *Wend.* 448.) There being no valid execution issued, the plaintiffs have not exhausted their remedy, so as to entitle them to maintain this action.

V. The action cannot be maintained against the widow, because it does not appear, nor is it charged, that she has any separate estate. (*Cobine* v. *St. John*, 12 *Howard*, 336. *Phillips* v. *Hagadon*, *Id.* 17.) (1.) The evidence shows that she had parted with her interest in the estate of her husband before the distribution took place, and it never came into her possession. (2.) If this was ever a separate estate of hers, it certainly was not so at the time of the commencement of the action. (3.) In order to sustain a suit against a married woman, it must appear that she had a present subsisting estate at the time of its commencement; that she once had one, will not be sufficient. (4.) The estate must also be clearly described, in order to enable the court to make the necessary direction as to its application in satisfaction of the judgment. (*See Cobine* v. *St. John*, 12 *Howard*, 336.) (5.) The judgment is defective in declaring it a lien upon her separate estate, and directing execution to issue. (6.) An execution cannot issue against a married woman; the only manner a judgment can be enforced against her estate, is by the appointment of a receiver to take charge of it, and apply it in satisfaction of the judgment.

VI. The defendant R. H. Hinman is not a proper party. (1.) The cause of action arose after his marriage with Mrs.

Hinman; the case, therefore, does not come within the provisions of the statute of 1853. (2.) The action is not *in rem.* against the estate distributed, but against the next of kin personally. The estate itself is only the measure of liability of each. (3.) The action being personal against them, no right of action accrued until they had received their distributive share of the estate.

*R. S. Emmet,* guardian *ad litem* for infant defendants. I. Actions by creditors against next of kin, to recover debts due by an intestate, will only lie against those of the next of kin to whom assets shall have been paid or distributed, (2 *R. S.* 275, § 47,) and by whom such assets shall have been received. (*Id.* 693, § 23.) No part of the assets of Thomas Lewis, deceased, was ever paid to these defendants. Their shares of the assets were paid to their guardian. In all cases where minors are entitled to a share of the personal estate of an intestate, or testator, either as children, next of kin, or legatees, the statute creates a trust whereby the guardian or the surrogate is made the trustee to receive and hold such share, and to apply the income thereof. (2 *R. S.* 276, 283, §§ 51–55, 87.) The minor, during his minority, stands in the relation of *cestui que trust* of the estate. This trust is precisely analogous to a trust created by will, whereby personal property is bequeathed to a trustee, to apply the income thereof to the use of a *cestui que trust*, and to pay over the principal at the expiration of a stated period. The trustee is the legal owner; the *cestui que trust* the equitable owner of the assets. The minor's legal absolute ownership of the assets is prospective, and contingent upon his coming of age; until then he has no power to dispose of or control the assets. He can neither compromise or pay the intestate's debts so as to avoid a suit, nor satisfy a judgment if recovered against him. The assets may never come into his hands. They may be wasted or lost by his guardian or trustee. The assets of an intestate, therefore, cannot be said to be paid to

a minor next of kin, or to have been received by him. His receipt of such assets, if ever, is on his coming of age, before which time he is not entitled to receive them. (2 *R. S.* 276, § 55.) The statute being in derogation of the common law so far as it creates a contract between the next of kin and the creditors of the deceased, must be construed strictly. The restriction in the statute of a right of action only against those legatees and next of kin, to whom assets shall have been paid, was intended to apply to cases of this kind where the next of kin or legatees could not, by law, receive the assets.

II. The liability of next of kin to creditors of a deceased intestate, grows out of a statutory contract to pay the debts due by the intestate to the extent of the assets received, which contract, by the next of kin, is implied from their receipt of the assets. The statute creating this liability was not intended to be in derogation of the common law governing the liability of infants. At common law the contracts of an infant were voidable, and subject to be affirmed or disaffirmed upon his coming of age, even though the contract be for the benefit of the infant. (2 *Kent*, 234 *et seq.*) The infant, upon his coming of age, may elect to decline the legacy or distributive share.

III. The real estate mortgaged by the intestate to secure his debt is chargable as the primary fund for the payment of that debt. (2 *R. S.* 156, § 4. *Johnson* v. *Corbett*, 11 *Paige*, 265.) The administrators or next of kin are, therefore, if liable at all, only so secondarily and as sureties, and the creditor is bound to use diligence in collecting the debt out of the primary fund. It appears from the pleadings, that the intestate's debt to the plaintiffs became due in the year 1851, and the same was secured by mortgage of real estate; and it appears from the referee's report, that no proceedings were taken by the plaintiffs to collect the debt out of the mortgaged premises until the year 1858. The premises were sold in 1856 for the sum of $15,660, and between the time when

the said debt became due and the time of the said sale, the premises were worth at least $22,500. The failure or neglect of the plaintiffs to collect the debt out of the mortgaged premises when they might have done so, discharges the administrator or next of kin from all liability for any deficiency. (*Johnson* v. *Corbett,* 11 *Paige,* 265.)

*Hopper & Jackson,* for the respondent. I. A widow is to her intestate husband one of the "next of kin," or relatives to whom assets are paid or distributed within the meaning of the statute of distributions, (3 *R. S. 5th ed.* 177, § 47,) and of the statute regulating actions against "next of kin." (*Id.* 749, § 23.) (1.) It is assumed in all the cases that the question who shall be included in the term *next of kin,* is one of intention, to be determined from the context. And the question has usually arisen upon the construction of trust deeds or marriage settlements, or in determining by what title the husband surviving the wife takes her choses in action. (*Bailey* v. *Wright,* 18 *Ves.* 49. *Garrick* v. *Lord Camden,* 14 *id.* 381. *King* v. *Dr. Bettesworth,* 2 *Str.* 1111. 2 *Black. Com.* 514. *Merchants' Ins. Co.* v. *Hinman,* 4 *Abb. Pr. R.* 312.) (2.) It is not only the clear intent of the statute to include the widow under the term *next of kin,* but that is the only possible construction. Creditors may proceed against the "*next of kin.*" · (3 *R. S. 5th ed.* 749, § 23.) But in cases where she takes the entire surplus, if she were not included, creditors would be remediless. Notice of appraisement is served only on the *next of kin.* (*Id.* 169, §§ 3, 5.) Executor is not liable for assets paid to *next of kin,* after notice. (*Id.* 176, § 44.) Final settlement is proof of moneys paid to *next of kin.* (*Id.* 181, § 71.) The citation for final settlement is to the *next of kin.* (*Id.* 180, § 66.) The right to demand an accounting is confined to *next of kin.* (*Id.* 178, § 57.) . The words *next of kin* must here be taken in connection with what follows, and must be held to include all to whom any assets may have been paid, The object of the statute is to

protect the executor in making distribution, and at the same time protect the rights of creditors having valid claims against the estate. (*Id.* 749, § 23. *Id.* 177, § 47.) The action for contribution given by § 25, would undoubtedly lie against the widow, as one of the "relatives of the testator to whom such assets may have been paid." All parties take their distributive shares *cum onere;* and the debts of decedent are first to be paid. (*Id.* 183, § 82. *Id.* 749, §§ 23, 24, 25. *Id.* 177, § 47.)

II. It is immaterial whether the distributive shares of the defendants were paid to them personally, or to their authorized agents or assignees, or to some one for their use. The actual recipient of the money was the agent of the person entitled to receive it. And the statute makes the final settlement before the surrogate conclusive. (*Id.* 181, § 71.)

III. The infancy or coverture of the defendants, or that no proof was given that the defendant Mrs. Hinman has a separate estate, is no defense. The debt is made enforceable by statute against all who receive assets, without exception; and no such exceptions can be presumed, for the reasons stated *supra,* first point (2). (1.) In this case the statute creates the liability, and the recipients take their share of the assets, subject to any outstanding debt of the decedent. (2.) Even if no execution could at present be issued against Mrs. Hinman's estate, that does not affect the plaintiffs' right to a judgment. On her death, all her separate estate would become a general trust fund for the payment of all her debts. (*Norton* v. *Turvill,* 2 *P. Will.* 144.) (3.) This action is not founded on the supposition that Mrs. Hinman has charged her separate estate by appointment, and such separate estate need not be alleged. Her liability is made general by statute to the extent of the money received, and is not to be distinguished from the liability of the daughters. (3 *R. S.* 749.) (4.) The infants having received their shares, they cannot avoid the liability thereby incurred, without refunding the money or paying it into court. (2 *Kent's Com.* 240.

*Roof* v. *Stafford*, 7 *Cowen*, 179.  *Weed* v. *Beebe*, 21 *Verm. R.* 495–500.  *Hamblett* v. *Hamblett*, 6 *N. Hamp. Rep.* 333–339.  *Smith* v. *Evans*, 5 *Humph. R.* 70.  *Bailey* v. *Barnberger*, 11 *B. Mon. Rep.* 113–115.)

IV. It is not necessary that an execution should have been issued against the administrator. (3 *R. S.* 451.  *Id.* 176, § 44.  *Id.* 177, § 47.)  The fund is the same, and the right of contribution remaining, it can make no legal difference to the next of kin; while it would be unreasonable to delay the creditor, particularly after distribution and final settlement. In case of heirs, the fund is different, and the statute makes a distinction.  (3 *R. S.* 750.)

V. The execution was regularly issued.  (3 *R. S.* 174, § 36.  *Olmstead* v. *Vredenburgh*, 10 *How. Pr. R.* 215.)

VI. The plaintiffs used due diligence.  The foreclosure suit was regular, and was commenced shortly after the first default in payment of interest.

VII. The property brought its full value.  There is no evidence of any depreciation prior to the sale, which was at public auction, under direction of the sheriff, in presence of all parties, and is conclusive evidence of value.

BY THE COURT.  The term "next of kin," (in regard to the remedy,) means those to whom, under the statute of distributions, the personal estate of the deceased would pass.

The action is properly brought against the infants where the amount of the estate belonging to them has been paid over to the general guardian.  In such a case, the judgment should direct the money to be paid out of the funds in the hands of the guardian.

Mere delay in foreclosing a mortgage, without any request or notice to foreclose, and where the interest has been paid, is not enough to charge upon the mortgagees the consequences of a fall in the value of the property.

The sale by the widow, of her interest in the estate, left

her liable for the amount of the personal estate received by her assignee, to the same extent as if received by herself.

No judgment should be rendered against the defendant Richard H. Hinman, and the same must be so far modified as to omit any recovery against him.

Judgment modified so as to strike out any recovery against Richard H. Hinman, and to direct the recovery against the infants to be paid out of the moneys in the hands of their guardian.

[NEW YORK GENERAL TERM, May 6, 1861. *Clerke, Gould* and *Ingraham,* Justices.]